## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5018 | **DATE** | 2/21/2001 |
| **CASE TITLE** | ASIM ALITOVSKI vs. ELGIN CORRUGATED BOX CO. | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

FEB 2 6 2001
date docketed

MW
docketing deputy initials

date mailed notice

Document Number

20

TBK — courtroom deputy's initials

Date/time received in central Clerk's Office

mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASIM ALITOVSKI | ) | |
| | ) | |
| Plaintiff, | ) | No. 99 C 5018 |
| v. | ) | |
| | ) | **DOCKETED** |
| ELGIN CORRUGATED BOX CO. | ) | Judge Guzman |
| | ) | FEB 2 6 2001 |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Elgin Corrugated Box Company's motion for summary judgment pursuant to Fed. R. Civ. Proc. 56. For the reasons set forth below this motion is denied (#18-1).

### FACTS[1]

Plaintiff, Asim Alitovski (" Alitovski"), a former employee of Defendant Elgin Corrugated Box Company ("Elgin Box"), has sued Elgin Box for violations of the Americans With Disabilities Act ("ADA"), 42 USCA § 12112 for allegedly failing to accommodate his occupational disability, discriminating against him because of that disability, and terminating his employment because of that disability.

---

[1] The following statement of facts comes from Defendant Elgin Box's Local Rule 56.1(a)(3) statement of material facts and accompanying exhibits which was filed in support of its motion for summary judgment. Plaintiff Mr. Alitovski provided a statement of material facts filed under Local Rule 56.1(a)(3) (referred to in the pleading as Local Rule 12(N)(3), the predecessor to Local Rule 56.1(a)(3)) in support of his response to Elgin Box's motion for summary judgment. Mr. Alitovski did not file a Local Rule 56.1(b)(3)(A) statement properly responding to each paragraph of Elgin Box's 56.1(a)(3) statement. Therefore, this court can deem all the facts stated in Elgin Box's Local Rule 56.1(a)(3) statement as admitted. Local Rule 56.1(b)(3)(B).

1

In 1995, Alitovski was employed by Elgin Box as a lead person in the press department, a position he held for twelve years. Alitovski was injured on the job and continued to work with certain restrictions until he underwent surgery on his left shoulder on February 5, 1997. As of the date of his surgery Alitovski was being paid $16.58 per hour as lead person in the press department. Alitovski returned to light duty work on April 28 and 29, 1997, and then was absent from April 30, 1997 through June 6, 1997 when he returned to work with restrictions.

On October 15, 1997 Alitovski began working in a new position as a dye room mounter. He performed the job of dye mounter through July 13, 1998, receiving the same wage he had in February of 1997 even though the dye mounter job carried a considerably lower hourly rate for all other employees in that position. A reduction in orders received by Elgin Box resulted in Alitovski's transfer to a machine position called bander or unitizer. Because Alitovski was the last dye mounter placed into that department he was the first transferred out.

Elgin Box had two banders already employed when Alitovski was put into the position of bander. As a bander, Alitovski was paid $13.70 per hour, compared to the other two banders employed by Elgin Box that were paid $13.52 and $12.29 per hour respectively. Alitovski worked as a bander until September 21, 1998, when he stopped working in order to have his left wrist operated on to relieve a carpal tunnel condition.

Alitovski returned to work on October 5, 1998 and was assigned to light duty. During the month of November Alitovski went through a work hardening program, and upon being released for work without restrictions on December 2nd, he informed Elgin Box that he would be taking four weeks of vacation. On December 22, 1998 Alitovski came to the Elgin Box plant and informed Mr. Poole, the Chief Financial Officer of Elgin Box, that he felt that he could no longer perform the bander job. Alitovski felt his left hand would be unable to handle the sheets

of cardboard as the job required and because it was aggravating the injury to his left upper extremity. Alitovski testified that he does not believe that the bander or unitizer job could be modified in any way so that Alitovski would be capable of performing the unitizer job. Alitovski then requested a job transfer which did not aggravate his injury. Alitovski was advised by Elgin Box that nothing could be done to accommodate him. Alitovski then requested disability leave. This leave was denied by Elgin Box based upon the fact that Alitovski had received a release back to work without restriction.

On January 4, 1999 Alitovski returned to work and advised the plant manager Jay Houston that he felt that he was physically unable to perform the job of bander, the job that he was performing prior to his wrist operation. Mr. Houston then offered Alitovski the job of forklift driver or roll-grabber, and the next day, January 5, 1999, Alitovski observed the performance of this job.[2]  On January 6, 1999, Alitovski called in sick to work, and upon returning to work on January 7, he advised Mr. Houston that he did not feel that he could perform the forklift job. *Id.* On the same day, Mr. Houston advised Alitovski that there were no other jobs available for him, and if he could not perform the forklift driver job, nor the bander job, then no jobs ware available for him at Elgin Box. Upon being so advised, Alitovski left the premises of the plant and did not return. On January 13, 1999 Alitovski received a second release from his hand surgeon, also clearly marked unrestricted and effective immediately. Alitovski admitted under oath that he received this second release.

Alitovski was performing the job of bander before his absence for his left wrist operation on September 21, 1998. He does not believe that the bander job could be modified in any way so that he would be capable of performing it. Nor does he believe that he could perform the

---

forklift driver job, or that the job could be modified so that he could perform it since the job requires going from inside to outside repeatedly, and changing weather "bothers" him. On June 29, 2000 the Illinois Industrial Commission awarded Alitovski's benefits as a result of the injuries to Alitovski's left upper extremity.

## DISCUSSION

Summary judgment is proper if the record as a whole shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the nonmoving party to come forward with "'specific facts showing that there is a genuine issue for trial' by referring to the record evidence on file." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 795-96 (7th Cir.1997) (quoting Fed.R.Civ.P. 56(e)). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (citation omitted).

The only issue before this Court for purposes of summary judgment is whether summary judgment should be granted in Elgin Box's favor because Alitovski is not a qualified individual for purposes of protection of the Act. Elgin Box argues that by Alitovski's own statements made during his deposition, Alitovski is not a qualified individual because he was physically incapable of doing the job he had been doing and was physically incapable of doing the jobs available to him. In the alternative, Elgin Box argues that Alitovski is not a qualified individual for purposes of protection of the Act based upon the reports submitted by Alitovski's physicians. Before turning to the evidence, the Court shall take a moment to reemphasize the framework used to make out a claim under the American with Disabilities Act.

4

In order to state a cognizable cause of action under the ADA, a putative plaintiff must establish that he is a "qualified individual with a disability." 42 U.S.C. § 12112(a); *Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L. Ed. 2d 966 (1999) (quoting 42 U.S.C. § 12111(8)). The statute defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Further, and of foremost importance for purposes of this case, a "disability" is defined as either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual; " (2) "a record of such impairment; " or (3) "being regarded as having such an impairment." *Id.* at § 12102(2)(A)-(C).

According to the Supreme Court, consideration of subsection (a) of the definition involves three steps. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S. Ct. 2196, 2202, 141 L. Ed. 2d 540 (1998). The Court must first determine whether Alitovski has an impairment. *See id.* Next, the Court must identify the life activity upon which he relies, and determine whether it constitutes a major life activity under the ADA. *See id.* Finally, by "tying the two statutory phrases together," the Court must determine "whether the impairment substantially limit[s] Alitovski's major life activity." *Id.* Determining whether a claimed impairment constitutes a disability and whether an identified endeavor constitutes a major life activity under the ADA are questions of law for the Court. *See id.* Whether an employee is "qualified" is a question of fact upon which the plaintiff bears the burden of proof at trail. *Kennedy v. Applause, Inc.,* 90 F. 3d 1477, 1480-81 (9th cir. 1996). Because Elgin Box's second argument requires resolution of the threshold issue of whether Alitovski suffers from a physical impairment for purposes of protection of the Act we address this argument first. Elgin Box has argued in its reply brief that

Alitovski was capable of engaging in unrestricted work with a physical demand level of medium. Numerous courts have held that a lack of medical testimony should be a factor cutting against a plaintiff's claim of disability. See, e.g. *United States v. City of Denver*, 49 F. Supp. 2d 1233 (D. Colo. 1999)(holding that a lack of physician testimony is but one factor in determining whether a plaintiff has met his burden to establish disability) and *Schwimmer v. Kaladjian*, 988 F. Supp 631, 640 (S.D. N.Y. 1997)(holding in a section 1983 case, that medical testimony is more persuasive than the witness' own recapitulation). However, in *Katz v. City Metal Co.*, 87 F. 3d 26 (1st Cir. 1996). In *Katz* the court held as follows:

[t]here is certainly no general rule that medical testimony is always necessary to established disability. Some long-term impairments would be obvious to a jury (e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatment and symptoms over a substantial period of time that would [allow] the jury [to] determine that [the plaintiff] did suffer from a disability.

*Id.* at 32.

Elgin Box points to Alitovski's physicians' statements which certainly support its argument that Alitovski was returned to work without restrictions. Dr. Dobozi from Loyola University opined that the majority of the pain that Alitovski was suffering from was subjective, and that Alitovski should be able to do occasional lifting up to 10 pounds overhead, do lifting up to 30 pounds to shoulder level on occasional basis, and up to 60 pounds from floor to waist on a repetitive basis. Furthermore, Dr. Sagerman returned Alitovski to work without restriction in January of 1999.

The report of the Illinois Industrial Commission as well as the undisputed facts that Alitovski suffered from both shoulder and wrist impairments raises questions of fact as to his alleged impairments. Furthermore, as set forth in *Katz* Alitovski's failure to present medical evidence of his alleged impairments, in and of itself, does not automatically warrant summary

judgment to Elgin Box. We must take the facts in a light most favorable to Alitovski and conclude because of Alitovski's shoulder and left wrist conditions that he has introduced evidence sufficient for a reasonable juror to conclude that he suffers from an impairment, which possibly affords him protection under the ADA. His left shoulder injury and left hand surgery for carpal tunnel syndrome has left him with residual pain that is properly understood as a "condition" that affects his muscoloskeletal system. See e.g. *Dalton v. Subaru-Isuzu Automotive, Inc.,* 141 F. 3d 668, 673 (7th Cir. 1988).

However, Alitovski must also establish that his impairment or impairments "significantly limited one or more major life activity." The EEOC's interpretive guidance indicates that "major life activities are those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. App. § 1630.2(i)(1999). Operating from this premise, the actual regulations list "caring for oneself, performing manual tasks, walking, seeing, hearing speaking, breathing, learning, and working" as examples of major life activities. *Id.* § 1630.2(i). (1999). A plaintiff must establish that the impairment substantially limits the ability to engage in the activity, and on this score, the regulations are rather specific. Pursuant to 29 C.F.R. § 1630.2(j), the EEOC defines "substantially limits" as leaving the plaintiff (1) "unable to perform a major life activity that the average person can perform;" or (2) "significantly restricted as to the condition, manner, or duration under which an individual [the plaintiff] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii) (1999).

The EEOC has stated that in order for one to be properly characterized as substantially limited from working as required by the ADA, an individual must be unable "to perform either a

class of jobs or a broad range of jobs in various classes as compared to the jobs performed by the average person having comparable training, skills and abilities." *Id.* § 1630.2(j)(3)(i). To the contrary the mere inability to perform a single, particular job will not suffice to establish a substantial limitation with respect to working. *Id.* The EEOC's interpretive guidance expands on this point, stating that an individual that "is unable to perform a particular job for one employer, or ... is unable to perform a specialized job" is not substantially limited in his ability to work. *Id.* App. § 1630.2(j). Both the EEOC and the courts, therefore, have required a plaintiff to show that his or her impairment prevents them from engaging in a category of jobs. Recently, the Supreme Court in *Sutton v. United Airlines,* stated [w]hen the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a class of jobs. 527 U.S. 471, 474, 119 S. Ct. 2139, 2150, 144 L. Ed. 2d 450.

Alitovski argues that  the physical impairments he suffers from with respect to his left shoulder and left wrist significantly limited his ability to perform a range of manual jobs at Elgin Box, which he properly classifies as a major life activity. See 29 C.F.R.§§1630.2(i); 1630.2(i)(3)(1999).  He also argues as a result of these impairments he was demoted.  In his affidavit opposing summary judgment Alitovski states that he was capable of handling the lead man job, the dye mounter job, slitter-operator and machine-box operator  but not the bander or the grabber jobs.  In this case, taking the evidence in a light most favorable to Alitovski, we conclude that the evidence offered raises a genuine issue of fact as to Alitovski's ability to engage in the major life activity of work because he may or may not be substantially limited in his ability to perform numerous manual tasks.

Elgin Box's alternate argument is that Alitovski was physically incapable of doing the job he was doing (bander) and thus he is not a qualified individual for purposes of Act. Alitovski does admit that he is unable to perform the job of bander. He also admits that he is unable to perform the job of forklift operator. Further, he admits that there are no reasonable accommodations which would allow him to perform these functions. This, however, does not end our inquiry. Some courts have held that an employer's obligation under the ADA ends upon a finding that an employee is not "qualified" for the position she held at the time she incurred her disability. See, e.g., *See Guillot v. Garrett,* 970 F. 2d 1320, 1327 (4th Cir. 1992). (*Bowers v. Bethany Medical Center,* 959 F.Supp. 1385, 1390 (D.Kan.,1997)). The Seventh Circuit however, has held that under the ADA's reassignment provision, an employer must consider the feasibility of assigning an employee to a different job in which his or her disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory. Americans with Disabilities Act of 1990, § 102(9)(B), 42 U.S.C.A. §12111(9)(B). *E.E.O.C. v. Humiston-Keeling,* Inc., 227 F.3d 1024, 1027 (7th Cir. 2000). Alitovski asserts that he should be allowed to resume his initial position as lead man in the press department, or the position of slitter operator or box machine operator. On this issue a genuine issue of material fact does exist. Mr. Alitovski claims that during the period that this court deems a question of his disability to exist there were vacant positions available for those jobs that he could perform, either with or without accommodation. Alitovski Affidavit ¶ 18. Elgin Box claims that no such jobs were available. John Poole Affidavit ¶ 17. Whether such positions were available to Mr. Alitovski either by virtue of vacancies or by virtue of his seniority and what ever rights such seniority entitled him to according to the company's non discriminatory policies regarding

seniority rights, remains an unresolved material question of fact. If the positions were not open to him, then, under such circumstances, the Seventh Circuit in *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699-700 (7th Cir.1998) has held that the ADA does not mandate a policy of affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. Alitovski is not entitled to a reassignment which would require replacing the worker already in that position for the purpose of accomplishing an accommodation to his disability. To do this would be to turn the ADA into an affirmative action program. The rulings of the Seventh Circuit have made it clear that this would be inconsistent with the aims of the statute. In summary, we find a material question of fact exists with respect to plaintiff's disability. We also find the record shows a material question of fact as to whether or not a reasonable accommodation was available by means of a transfer to another position the essential functions of which the plaintiff could perform in spite of his disability.

## CONCLUSION

For the reasons set forth above Elgin Box's motion for summary judgment is denied. (#18-1).

**SO ORDERED**

ENTERED:

HON. RONALD A. GUZMAN
**United States Judge**

10